IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ELSIE TRUJILLO,

      Plaintiff,

v.

      No. 2:15-cv-00936-KRS

NANCY BERRYHILL, Acting Commissioner
of the Social Security Administration,

      Defendant.

## ORDER LIFTING STAY, DENYING MOTION TO REVERSE AND REMAND, AND DISMISSING CASE WITH PREJUDICE

**THIS MATTER** comes before the Court on Plaintiff Elsie Trujillo's motion to reverse the Social Security Administration's final determination that she is not disabled under Titles II and XVI of the Social Security Act and remand for an award of benefits or, alternatively, further proceedings. (Doc. 33). With the consent of the parties to conduct dispositive proceedings, *see* 28 U.S.C. 636(c); (Doc. 32), the Court lifts the stay previously in place and considers whether the Administrative Law Judge's decision is supported by substantial evidence with the inclusion of a treating physician's opinion that was not before the ALJ, but made part of the record by the Appeals Council. Having done so in light of the administrative record and the parties' briefing, the Court **DENIES** Trujillo's motion, **AFFIRMS** the ALJ's decision, and **DISMISSES** the matter with prejudice.

### BACKGROUND

On February 2, 2018, the Court deferred ruling on the case in anticipation of the Tenth Circuit's opinion in *Vallejo v. Comm'r, SSA*, No. 17-1452, 2019 U.S. App. LEXIS 3325 (10th Cir. Feb. 1, 2019). (Doc. 38). In its order staying proceedings, the Court concluded the ALJ

correctly determined Trujillo's residual functional capacity (RFC) to perform light work.[1] (*Id.*). A single issue, however, prevented the Court from affirming the ALJ outright—how, precisely, the Court should address a tardy medical-source statement from Colicia M. Meyerowitz, MD, a treating physician, who assessed Trujillo with significant physical limitations from fibromyalgia and other conditions. (*Id.*). Significantly, were the ALJ required to accept Dr. Meyerowitz's limitations, the RFC determination would be unsound. (*Id.*). And normally, Dr. Meyerowitz's opinion would enjoy controlling weight under the treating-physician rule so long as the opinion was (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003).

What makes this case unique is that the ALJ did not have the benefit of Dr. Meyerowitz's medical-source statement when the ALJ ruled; it was completed *after* and lodged with the Appeals Council. (Doc. 38). The Appeals Council denied review but made the statement and other documents part of the record. (Doc. 38). The Court's inclination was to remand so the ALJ could consider the opinion in the first instance because a reviewing court is: (a) typically not permitted to undertake the treating-physician analysis itself; and (b) would necessarily face difficulty discerning whether substantial evidence supports an ALJ decision's in this regard when the ALJ has not applied the treating-physician framework at all. *See, e.g.*, 20 C.F.R. § 416.927(c)(2) (requiring the *agency* to "give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion"); *Thompson v. Sullivan*,

---

[1] This order focuses on the sole issued remaining in this case—whether substantial evidence supports the ALJ's decision when considered together with Dr. Meyerowitz's opinion. In so doing, the Court rejects Trujillo's other, unrelated arguments as explained in the Court's previous order, which amount essentially to an invitation to reweigh the evidence. The Court adopts that analysis here. For clarity, the RFC was further limited as noted in the ALJ's decision and the Court's previous order. The specific limitations are not listed here because they are not necessary to the analysis of the final issue before the Court.

987 F.2d 1482, 1487 (10th Cir. 1993) ("The appeals court neither reweighs the evidence nor substitutes its judgment for that of the agency.").

But the Tenth Circuit appeared to foreclose that approach in remanding a similar case to the District of Colorado. *See Vallejo v. Berryhill*, 849 F.3d 951, 956 (10th Cir. 2017) ("*Vallejo I*") (rejecting argument that district court was permitted to remand to the ALJ to undertake treating-physician analysis). On remand, that district court identified the same issues the Court described above and sent the case to agency for an award of benefits. The agency again appealed the district court's ruling to the Tenth Circuit. *See Vallejo II*, 2019 U.S. App. LEXIS 3325. This Court stayed proceedings here given the likelihood *Vallejo II* would clarify how the lower courts should handle similar cases. The Tenth Circuit ultimately gave this instruction:

> Because the Appeals Council accepted [the treating doctor's opinion] into the record, we consider whether the decision is supported by substantial evidence in the record as a whole, including [the treating doctor's] opinion. Of necessity, that means that we must speculate to some extent on how the administrative law judge would have weighed the newly submitted reports if they had been available for the original hearing. This may be a peculiar task for a reviewing court, but not an impossible one.

*Id*, at \*\*7-8 (10th Cir. Feb. 1, 2019) (citations and internal quotation marks omitted). The Tenth Circuit then applied the first prong of treating physician rule as if it were the ALJ and concluded substantial evidence supported the ALJ's decision to deny benefits. *Id.* Consistent with the Tenth Circuit's mandate, the Court now undertakes this "peculiar task."

## ANALYSIS

As is relevant here, Dr. Meyerowitz opined that Trujillo's fibromyalgia and other diagnoses meant Trujillo could not continuously sit for more that fifteen minutes at a time and, within this interval, could sit no more than a total time of four hours in an eight-hour workday. (AR 1204). As for standing, Dr. Meyerowitz limited Trujillo to ten minutes at a time and

estimated that Trujillo could stand within that interval for less than two hours of an eight-hour workday. (*Id.*). As was the court in *Vallejo II*, the Court is not persuaded that the ALJ was required to give Dr. Meyerowitz's controlling weight.

Pain-causing conditions such as "fibromyalgia present[] a conundrum for insurers and courts evaluating disability claims." *Welch v. UNUM Life Ins. Co. of Am.*, 382 F.3d 1078, 1087 (10th Cir. 2004) (ellipsis and internal quotation marks omitted); *Wilson v. Astrue*, 602 F.3d 1136, 1143 (10th Cir. 2010) (recognizing that "complaints of severe pain that do not readily lend themselves to analysis by objective medical tests are notoriously difficult to diagnose and treat") (collecting cases, including cases addressing fibromyalgia). Because fibromyalgia's "cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective." *Gilbert v. Astrue*, 231 F. App'x 778, 783 (10th Cir. 2007) (citations omitted). No laboratory tests exist for either the "presence or severity of fibromyalgia" and the chief "symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness, and . . . multiple tender spots[.]" *Id.* (citations omitted).

While objective medical tests may not diagnose fibromyalgia and like conditions, physical limitations resulting from its symptoms may be objectively evaluated. *See Tarpley v. Colvin*, 601 F. App'x 641, 643 (10th Cir. 2015) (citing *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 627 n.1 (10th Cir. 2003); *Boardman v. Prudential Ins. Co. of Am.*, 337 F.3d 9, 17 n.5 (1st Cir. 2003)). Thus, an ALJ may not reject a treating physician's opinion on functional limitations simply because of a lack of objective evidence of the condition. *Gilbert v. Astrue*, 231 F. App'x 778, 783 (10th Cir. 2007). At the same time, an ALJ may properly rely on contradictory activities of daily living and other objective indicia such as recommendations for exercise and

relief from medication. *See Tarpley,* 601 F. App'x at 644; *Romero v. Colvin*, 563 F. App'x 618, 621 (10th Cir. 2014).

In this case, the ALJ examined Trujillo's activities of daily living and concluded those "activities are inconsistent with claimant's allegations of disabling symptoms and limitations." (AR 38). The ALJ observed, for example, that Trujillo alone cared for a developmentally disabled daughter and served as the daughter's financial fiduciary. (*Id.*). Trujillo also rated her activities of daily living and quality of life at seven out of a possible ten to medical providers. (AR 38-39). The ALJ noted that Trujillo "was able to complete personal care and hygiene" as well as "prepared meals twice per day, washed laundry, and cleaned her living room every other week." (AR 36). Despite not getting out much, Trujillo socialized on the phone and in person and shopped at the store on a monthly basis in addition to attending doctors' appointments for herself and her daughter." (*Id.*).

The ALJ further explained Trujillo can "pay bills, count change, and use a checkbook." (*Id.*). In 2015, Trujillo took an out-of-state trip for over a month to help her brother. (AR 42). The ALJ commented that Dr. Noah Kaufman, who performed a neuropsychological evaluation, recommended "exercise . . . and a busy schedule of healthy activities including chores and contact with prosocial peers." (AR 41). Another doctor at Las Cruces Orthopedics discussed "lifestyle changes, diet, exercise[.]" (AR 40). Finally, the ALJ noted, that Trujillo reported to one doctor that "Cymbalta was working." (AR 40). Based on the foregoing, the Court concludes the ALJ would reject Dr. Meyerowitz's medical source statement assessing physical limitations.

Notwithstanding the inclusion of Dr. Meyerowitz's assessment, the ALJ's determination remains supported by substantial evidence. *See Vallejo I*, 849 F.3d at 956 ("The district court's only option [is] to conduct a substantial-evidence review by assessing the entire agency record,

including [the treating doctor's] never-before assessed opinion"). "Substantial evidence" means "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th 2007). In fact, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence" and does not warrant remand. *Id.* Trujillo's ability to look after her daughter, care for herself, prepare meals, do laundry, socialize, go out of town, and take care of finances is more than a scintilla of evidence supporting the ALJ's likely rejection of Dr. Meyerowitz's opinion.

In *Tarpley*, the Tenth Circuit upheld the ALJ's rejection of treating doctors' assessments of functional limitations in a fibromyalgia case. 601 F. App'x at 643. In so doing, the court of appeals reasoned that "very little in [the providers'] medical records suggests that [the plaintiff] is as disabled as [those providers] claimed." *Id.* In fact, "examination records suggest [the plaintiff] enjoys a full range of motion in her joints, possesses normal strength, and walks and moves without much difficulty." *Id.* The Tenth Circuit also drew on record evidence that the plaintiff "has been able to care for her personal needs, do household chores, and go shopping." *Id.* Finally, the court drew on evidence that medication alleviated the plaintiff's symptoms, one treating physician recommended the plaintiff remain active, and the plaintiff complied. *Id.*

Many of the features in *Tarpley* are present here. Dr. Meyerowitz's records from 2016 not before the ALJ suggest some difficulty walking, but are mostly silent as to any *physical* limitations. (AR 12-16). Earlier progress notes from Dr. Meyerowitz to which the ALJ was privy described Trujillo as "fairly active" and noted a normal gait (AR 948-58). Thus, there is very little in Dr Meyerowitz's own records that suggest that Trujillo is as limited as Meyerowitz says. Moreover, as in *Tarpley*, Trujillo is able to meet her personal-care needs, cook, clean, take care of household tasks, and socialize. She is the sole caregiver for a developmentally disabled

adult child. Trujillo even took a trip to help her brother. As the ALJ noted, two of Trujillo's healthcare providers recommended she *increase* her physical activity, providing some support that Trujillo did not suffer from the physical limitations assessed. Finally, Trujillo told a provider on one occasion that medication helped improve her symptoms. When analyzed in terms of the entire record, Dr. Meyerowitz's medical source statement does not change the substantial evidence that supports the ALJ's adverse decision.

## CONCLUSION

Following the Tenth Circuit's guidance in *Vallejo II*, the Court determines that the ALJ's decision should be affirmed notwithstanding Dr. Meyerowitz's medical source statement and other records that became part of the administrative record after the ALJ ruled. The ALJ's decision is supported by substantial evidence and is free from legal error as explained above and in the Court's previous order. (Doc. 38).

**IT IS, THEREFORE, ORDERED** that the stay of proceedings is hereby **LIFTED**.

**IT IS FURTHER ORDERED** that Trujillo's motion to reverse and remand (Doc. 33) is **DENIED**, and the decision of the ALJ is **AFFIRMED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED** with prejudice.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent